"O"

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| STEPHEN EDWARD MASON, | ) | CASE NO. SACV 08–0235 AG (RNBx) |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | ORDER GRANTING DEFENDANT RISKO'S MOTION TO STRIKE AND GRANTING IN PART DEFENDANT RISKO'S MOTION TO DISMISS |
| COUNTY OF ORANGE, MICHAEL S. CARONA, DEPUTY SHERIFF PETER M. PEREZ, DEPUTY SHERIFF BERTRAND R. COPELAND, DEPUTY SHERIFF ROBERT B. SUTTON, DEPUTY SHERIFF ROBERT MANCHE, DEPUTY SHERIFF BLAINE STEPHENSON, SERGEANT STEPHEN SIMPSON, DEPUTY SHERIFF GREGORY S. T. RISKO and DOES 1 through 10, inclusive, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Before the Court is a Special Motion to Strike Plaintiff's Second Amended Complaint ("Motion to Strike") filed by Defendant Gregory S. T. Risko ("Risko"). Also before the Court is a Motion to Dismiss and/or Strike the First Amended Complaint or, in the Alternative, for a More Definite Statement ("Motion to Dismiss ") filed by Defendant Risko. After considering all papers and arguments submitted, the Court GRANTS the Motion to Strike and GRANTS in part the Motion to Dismiss.

# BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint ("SAC").

Plaintiff Stephen Edward Mason ("Plaintiff") and his family reside in San Clemente, California, across the street from Risko, a sworn deputy sheriff with the Orange County Sheriff's Department. Plaintiff and Risko do not enjoy a friendly relationship. On May 31, 2006, Defendant Risko and his wife obtained an Orange County Superior Court restraining order against Plaintiff, enjoining him from annoying or otherwise harassing them and their children and from being within 30 feet of the family. (SAC ¶ 30.) Following the issuance of the restraining order, Risko and his wife frequently contacted the Orange County Sheriff's Department with fabricated complaints about Plaintiff. (SAC ¶¶ 31, 32.) Risko's colleagues at the Orange County Sheriff's Department accepted these complaints as true, and on Risko's behalf would "torment, arrest, cite and otherwise harass and violate the state and federal statutory and constitutional rights" of Plaintiff. (SAC ¶ 32.)

On Saturday, May 3, 2007, the tensions between Plaintiff and Risko came to an unfortunate head. Plaintiff arrived home from his son's baseball game at approximately 2:30 p.m. Between 2:30 and 3:00, Plaintiff left his home to pick up his son and a few of his son's friends at their high school. Plaintiff was not aware that Risko and his wife had contacted the Orange County Sheriff's Department between 2:00 and 2:30 that afternoon, complaining that Plaintiff had violated the restraining order by "driving too closely" behind Risko on the street where both parties lived. (SAC ¶ 34.) When officers from the Sheriff's Department arrived at Risko's home, Risko told them that plaintiff had violated the restraining order by following him too closely in his car and that he "desired the criminal prosecution" of Plaintiff. (SAC ¶ 35.) Risko informed the officers that Plaintiff was inside his home, and he and the officers discussed a plan for the officers to arrest Plaintiff by having an Orange County Sheriff's Department dispatcher call Plaintiff and tell him to come outside of his home. (SAC ¶ 36.) Risko "also apparently told said deputy sheriffs that Plaintiff was a constant thorn in his side, and that he would like them to treat him with unreasonable force when they unlawfully arrested him," as is

2

"customary" for Orange County Sheriff's Department Deputy Sheriffs "when they seize someone who is allegedly giving one of their fellow deputy sheriff's [*sic*] a 'hard time.'" (SAC ¶ 36.)  Alternatively, Risko "knew and understood that by telling his fellow Orange County Sheriff's [*sic*] that plaintiff had been harassing him and his wife, something untrue, that his fellow deputy sheriffs . . . would use unreasonable force upon plaintiff and would unlawfully arrest him by ordering him to come out of his home." (SAC ¶ 36.)

When Plaintiff arrived home at approximately 3:00 that afternoon with his son and his son's friends, he walked through his living room and noticed Defendants Perez, Copeland, Sutton, Manche, Stephenson, and Simpson, all officers with the Orange County Sheriff's Department, "crouched down in his back / side yard near some bushes." (SAC ¶ 37.)  Defendant Manche saw Plaintiff through a window and yelled for Plaintiff to come out of the house. (SAC ¶ 38.)  Defendants Risko, Perez, Copeland, Sutton, Manche, Stephenson, and Simpson had conspired to have an Orange County Sheriff's Department dispatcher "do a 'call-out'" on Plaintiff. (SAC ¶ 39.)  The dispatcher telephoned Plaintiff to tell him that deputy sheriffs were "waiting for him outside" and that he "needed to come outside of his home with his hands up where the deputies could see them." (SAC ¶ 39.)  Plaintiff then went to his door, opened it, and asked the assembled officers what they were doing. (SAC ¶ 41.)

Immediately, Plaintiff heard what he believed to be gun shots as the officers fired taser darts into Plaintiff's home. (SAC ¶ 42.)  Plaintiff attempted to shut his door and shouted, "Wait a minute; I have young kids in my home!" (SAC ¶ 43.)  One taser dart barely missed one of the teenage boys in Plaintiff's home. (SAC ¶ 44.)  The door to Plaintiff's home was then kicked in by the assembled officers, and Plaintiff was knocked against the wall inside his home. (SAC ¶ 45.)  Defendant Perez shot Plaintiff with a taser gun several times, once with the taser gun against Plaintiff's chest. (SAC ¶¶ 46, 47.)  Plaintiff dropped to the floor, his body convulsing from the electric shocks inflicted by Perez. (SAC ¶ 48.)  Defendants Perez, Copeland, Sutton, Manche, Stephenson, and Simpson then began kicking Plaintiff's side and neck. (SAC ¶ 49.)  The beating continued despite Plaintiff begging the officers to stop and repeatedly asking, "What did I do?  What did I do?" (SAC ¶¶ 50-55.)

Plaintiff was then brought outside to his front yard.  (SAC ¶ 56.)  He asked his young son, who had witnessed the entire incident, to take a picture of his face.  (SAC ¶ 56.)  Perez and the other officers, save Risko, then stepped in front of Plaintiff's son and asked, "You want to go to jail with your father?"  (SAC ¶ 57.)  Plaintiff asked the officers repeatedly what he had done to deserve the attack.  One officer answered that he had followed Defendant Risko home.  (SAC ¶¶ 58, 59.)  Plaintiff did not understand how he could have been accused of following Risko home, as the two live very close to one another and, in any event, Plaintiff had not followed Risko in his car as alleged.  (SAC ¶ 60.)

Plaintiff was then arrested by Defendants Perez, Copeland, Sutton, Manche, Stephenson, and Simpson via Risko's private person's arrest of Plaintiff.  (SAC ¶ 61.)  Plaintiff was transported to the Orange County Jail.  (SAC ¶ 63.)  The officers later authored false crime reports and other documents related to the incident. (SAC ¶ 68.)  Based on the false and misleading information provided by the officers, the Orange County District Attorney's office brought a misdemeanor criminal action against Plaintiff for violations of Cal. Penal Code §§ 166.4 and 148(a)(1).  (SAC ¶ 68.)  That case was ultimately dismissed.  (SAC ¶ 126.)

Plaintiff now brings fourteen claims against the defendants in this case.  Eleven of those claims are brought against Defendant Risko: (1) Plaintiff's first claim for unlawful seizure of person, in violation of 42 U.S.C. § 1983; (2) Plaintiff's second claim for unreasonable and excessive force, in violation of 42 U.S.C. § 1983; (3) Plaintiff's fourth claim for violation of right to freedom of speech, in violation of 42 U.S.C. § 1983; (4) Plaintiff's fifth claim for false arrest/false imprisonment, in violation of Cal. Gov't Code §§ 815.2(a), 815.6, 820, 820.2, and 820.8; (5) Plaintiff's sixth claim for battery, in violation of Cal. Gov't Code §§ 815.2(a), 815.6, 820, and 820.8; (6) Plaintiff's seventh claim for assault, in violation of Cal. Gov't Code §§ 815.2(a), 815.6, 820, and 820.8; (7) Plaintiff's eighth claim for intentional infliction of emotional distress, in violation of Cal. Gov't Code §§ 815.2(a), 815.6, 820, and 820.8; (8) Plaintiff's ninth claim for violation of Cal. Civ. Code § 52.1; (9) Plaintiff's tenth claim for malicious criminal prosecution, in violation of 42 U.S.C. § 1983; (10) Plaintiff's twelfth claim for unlawful entry into private residence, in violation of 42 U.S.C. § 1983; and (11) Plaintiff's

thirteenth claim for trespass to residence, in violation of Cal. Gov't Code §§ 815.2(a), 815.6, 820, and 820.8.

Risko here moves to dismiss the Second Amended Complaint under California Civil Code § 425.16 and Federal Rule of Civil Procedure 12(b)(6).

**ANALYSIS**

In his Motion to Strike, Defendant Risko argues that Plaintiff's claims against him, except the malicious prosecution claim, must be stricken under California's Anti-SLAPP statute.  In his Motion to Dismiss, Defendant Risko argues that all of Plaintiff's claims against him are subject to dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court addresses each motion in turn.

**1.      MOTION TO STRIKE**

Defendant Risko first argues that all of the claims against him, except Plaintiff's tenth claim for malicious prosecution, must be stricken under California's statute attacking Strategic Lawsuits Against Public Participation ("Anti-SLAPP statute").  That statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim . . . .

Cal. Civ. Code § 425.16.  Section 425.16 applies in federal court.  *Dealertrack, Inc. v. Huber*, 460 F. Supp. 2d 1177, 1180 (C.D. Cal. 2006) (citing *United States v. Lockheed Missiles & Space*

1    *Co.*, 190 F.3d 963 (9ᵗʰ Cir. 1999)); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206 (9ᵗʰ Cir.

2    2005) (affirming the Ninth Circuit's holding in *Lockheed Missiles* that "California anti-SLAPP

3    motions to strike and entitlement to fees and costs are available to litigants proceeding in federal

4    court."). A party filing a special motion to strike under the Anti-SLAPP statute must make an

5    initial prima facie showing that the opposing party's suit arises from an act in furtherance of the

6    party's right of petition or free speech. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9ᵗʰ

7    Cir. 2005) (citing *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4ᵗʰ 1036 (Cal. Ct. App. 1997)). It

8    need not be shown that the suit was brought with the intention to chill the defendant's speech.

9    The plaintiff's intentions are "ultimately beside the point." *Id.*, citing *Equilon Enterprises, LLC*

10   *v. Consumer Cause, Inc.*, 28 Cal. 4ᵗʰ 53 (Cal. 2002).

11        After the prima facie showing is made, the burden then shifts to the opposing party to

12   prove a probability of prevailing on the merits. *Blanchard v. DirecTV, Inc.*, 123 Cal. App. 4ᵗʰ

13   903, 912-913 (Cal. App. 2d 2004). To meet its burden, the opposing party "must demonstrate

14   that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain

15   a favorable judgment if the evidence submitted by the [non-moving party] is credited." *New.Net,*

16   *Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1099 (C.D. Cal. 2004). In determining the probability

17   that a claim will prevail on the merits, the court should apply a standard "similar to the standard

18   applied to evidentiary showings in summary judgment motions," looking only to "competent

19   admissible evidence." *Church of Scientology v. Wollersheim*, 42 Cal. App. 4ᵗʰ 628, 654 (1996)

20   (overruled on other grounds, *Equilon Enterprises*, 29 Cal. 4ᵗʰ at 68 n. 5).

21        Here, the Court finds that Risko has made a prima facie showing that Plaintiff's claims

22   against him arise from protected activity: Defendant Risko's "right to free speech and right to

23   petition for redress." (Motion to Strike 9:22.) All of Plaintiff's claims against Risko arise from

24   Risko's phone call to the Sheriff's Department reporting Plaintiff's alleged violation of the

25   personal restraining order and Risko's subsequent conversation with the officers at his own

26   home. Reporting another person's unlawful conduct to the police, with the intention of

27   prompting his or her arrest, constitutes a protected petition to an official body. *See Chabak v.*

28   *Montroy*, 154 Cal. App. 4ᵗʰ 1502, 1512 (2007). Moreover, under the litigation privilege found at

1    Section 47(b) of the California Civil Code, statements to the police are absolutely privileged and

2    therefore protected activity, even when false.  *See Hagberg v. California Federal Bank FSB*, 32

3    Cal. 4th 350, 375 (2004).  This absolute privilege is necessary "to assure utmost freedom of

4    communication between citizens and public authorities whose responsibility is to investigate and

5    remedy wrongdoing." *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990) (citing *Imig v. Ferrar*, 70

6    Cal. App. 3d 48, 55 (1977)).  Statements protected under the Section 47(b) litigation privilege

7    are "equally entitled to the benefits of Section 425.16." *Briggs v. Eden Council for Hope &*

8    *Opportunity*, 19 Cal. 4th 1106, 1115 (1999).  Defendant Risko's statements to the police

9    regarding Plaintiff's alleged violation of the personal restraining order are absolutely privileged

10   under Section 47(b) and thus protected activity under Section 425.16.

11        Plaintiff argues that Risko's conduct in this case is not protected by the Anti-SLAPP

12   statute or the litigation privilege because Risko was not acting as a private citizen.  Citing

13   several cases, Plaintiff argues that peace officers are considered to be "on-duty" when

14   performing law enforcement functions.  (Opp'n 6:13.)  But Risko was enforcing  a *personal*

15   protection order against Plaintiff when he called the Sheriff's Department. *See McDade v. West*,

16   223 F.3d 1135, 1140 (9th Cir. 2000) (holding that "acts of officers in the ambit of their personal

17   pursuits" are clearly not acts "under color of law").  Risko was not present during Plaintiff's

18   arrest and did not perform any "law enforcement" functions during the May 3, 2007 incident.

19   Plaintiff himself acknowledges that Risko effectuated a "private person's" arrest.  (SAC ¶ 61.)

20   The Court finds that, in this case, Risko's communications with the Sheriff's Department and the

21   arresting officers are protected activity under the Anti-SLAPP Statute.  Risko has met his

22   burden.

23        Because Risko has made a prima facie showing that Plaintiff's claims against him arise

24   from protected activity, the burden shifts to Plaintiff to show a probability of prevailing on the

25   merits.  The Court finds that Plaintiff has not met that burden.  Plaintiff states claims against

26   Risko for unlawful seizure, excessive force, violation of right to free speech, false imprisonment,

27   battery, assault, intentional infliction of emotional distress, violation of California Civil Code

28   § 52.1, unlawful entry, and trespass to residence.  All of those claims arise from Risko's

1  statements to the police relating to the May 3, 2007 incident at Plaintiff's home.  Again, Risko's

2  statements to the police are absolutely privileged under Section 47(b) of the California Civil

3  Code.  *See* Cal. Civ. Code § 47(b); *Hagberg*, 32 Cal. 4th at 375; *Silberg*, 50 Cal. 3d at 213.  The

4  Court cannot find that those claims against Risko are likely to succeed.

5           The Motion to Strike is GRANTED.  All of Plaintiff's claims against Defendant Risko,

6  save the malicious prosecution claim, are stricken under the California Anti-SLAPP statute.

7  Risko is entitled to reasonable attorney fees incurred in defending the stricken claims, and may

8  file a separate motion for such fees.

9

10 **2.      MOTION TO DISMISS**

11

12          Defendant Risko's Motion to Dismiss argues that all of Plaintiff's claims against him are

13 subject to dismissal for failure to state a claim upon which relief can be granted.  Because the

14 Court has granted Risko's Motion to Strike, only Plaintiff's claim for malicious prosecution

15 remains.  The Court thus addresses only that claim.

16          Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a

17 plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed R. Civ. P.

18 12(b)(6).  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the

19 pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "[O]rdinary pleading rules are not meant to

20 impose a great burden upon a plaintiff."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347

21 (2005).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice

22 of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 127 S. Ct.

23 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964

24 (2007)).  Thus, a complaint may not be dismissed for failure to state a claim where the

25 allegations plausibly show "that the pleader is entitled to relief."  *Bell Atlantic*, 127 S.Ct. at

26 1965.  Conversely, a complaint should be dismissed for failure to state a claim where the factual

27 allegations do not raise the "right of relief above the speculative level."  *Id*.

28          In deciding a 12(b)(6) motion, the Court must accept as true all factual allegations in the

1   complaint and must draw all reasonable inferences from those allegations, construing the

2   complaint in the light most favorable to the plaintiff. *Westlands Water Dist. v. Firebaugh Canal*,

3   10 F.3d 667, 670 (9th Cir. 1993); *see also Enesco Corp v. Price/Costco, Inc.*, 146 F.3d 1083,

4   1085 (9th Cir. 1988). However, courts are not required "to accept as true allegations that are

5   merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v.*

6   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

7         To state a claim for malicious prosecution under California law, a plaintiff must allege:

8   (1) that a prior action against him was commenced by or at the direction of a defendant and was

9   pursued to a legal termination in the plaintiff's favor; (2) that the action was brought without

10   probable cause; and (3) that the action was initiated with malice. *Sheldon Appel Co. v. Albert &*

11   *Oliker*, 47 Cal.3d 863, 871-72 (1989). Here, Plaintiff alleges that Defendants Perez, Copeland,

12   Sutton, Manche, Stephenson, and Simpson provided false information to the Orange County

13   District Attorney's Office and caused the District Attorney to file a "bogus" criminal action

14   against Plaintiff. (SAC ¶ 124.) In August 2007, that criminal action was dismissed "pursuant to

15   a motion by The People." (SAC ¶ 125.) Plaintiff alleges that the criminal action was dismissed

16   "in a manor [*sic*] inconsistent with guilt, as the Deputy District Attorneys involved in said

17   misdemeanor criminal action came to the belief that the plaintiff was innocent of the crimes that

18   he was accused of and/or that the state of the evidence in that case was such that said Deputy

19   District Attorneys involved in said misdemeanor criminal action came to the belief that a trial of

20   said action would result in a verdict in plaintiff's favor." (SAC ¶ 126.) Risko argues that the

21   claim must be dismissed because Plaintiff fails to allege facts tying Risko to the alleged

22   malicious prosecution. Risko also argues that Plaintiff fails to sufficiently plead favorable

23   termination of the action against him.

24         The Court agrees that Plaintiff fails to allege sufficient facts tying Defendant Risko to the

25   alleged malicious prosecution. Plaintiff alleges that the actions of Defendants Perez, Copeland,

26   Sutton, Manche, Stephenson, and Simpson, "especially in providing false information to the

27   Orange County District Attorney's Office," led to the "bogus" criminal action against him.

28   (SAC ¶ 124.) Nowhere does Plaintiff state how any of Defendant Risko's actions led to the

1   "bogus" criminal action.  Plaintiff does not state a claim for malicious prosecution against

2   Defendant Risko.

3          The Motion to Dismiss is GRANTED with leave to amend as to Plaintiff's tenth claim for

4   malicious criminal prosecution.

5

6   **<u>DISPOSITION</u>**

7

8          The Motion to Strike is GRANTED as to Plaintiff's claims against Defendant Risko for

9   unlawful seizure, excessive force, violation of right to freedom of speech, false imprisonment,

10  battery, assault, intentional infliction of emotional distress, violation of California Civil Code §

11  52.1, unlawful entry, and trespass to residence.  The Court strikes those claims as against

12  Defendant Risko without leave to amend.  *See Thomas v. L.A. Times Comms. LLC*, 189 F. Supp.

13  2d 1005, 1017 (C.D. Cal. 2002) ("Plaintiff may not amend his Complaint after it is stricken

14  pursuant to California Code of Civil Procedure § 425.16."); *see also Simmons v. Allstate Ins.*

15  *Co.*, 92 Cal. App. 4th 1068, 1073-74 (2001).  The Motion to Dismiss is GRANTED with leave to

16  amend as to Plaintiff's claim for malicious prosecution.  If Plaintiff wishes to file a Third

17  Amended Complaint, he may do so by March 24, 2009.

18

19

20  IT IS SO ORDERED.

21  DATED: March 3, 2009

22

23                                                            _____

24                                                                      Andrew J. Guilford
                                                                  United States District Judge

25

26

27

28